**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| KEVIN BACHHUBER, *on behalf of himself and all others similarly situated,* | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:26-cv-03502-JAV-VF |
| SECURE INVESTING ADVISORS, LLC d/b/a CAVALA FUNDING SOLUTIONS, | ) | |
| Defendant. | ) | |

**DEFENDANT SECURE INVESTING ADVISORS, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

## TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. LEGAL STANDARD .......... 3

III. ARGUMENT .......... 3

A. A Text Message is Not a "Telephone Call." .......... 3

B. The FCC Did Not Promulgate its Text-Message Regulation Under its Subsection 227(c) Authority .......... 8

1. The FCC's 2003 TCPA Order did not Create any Private Action Under Subsection 227(c) .......... 11

2. The FCC's 2023 TCPA Order did not Create a Private Right of Action Under Subsection 227(c) .......... 13

IV. CONCLUSION .......... 16

## TABLE OF AUTHORITIES

**Cases**

*ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018) ..... 15

*Alexander v. Sandoval*, 532 U.S. 275 (2001) ..... 14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..... 3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..... 3

*Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) ..... 9

*Davis v. CVS Pharm., Inc.*, 797 F. Supp. 3d 1270 (N.D. Fla. 2025) ..... 4, 5, 8

*Den Hollander v. Copacabana Nightclub*, 624 F.3d 30 (2d Cir. 2010) ..... 3

*El Sayed v. Naturopathica Holistic Health, Inc.*, Case No. 8:25-cv-00846-SDM-CPT, 2025 WL 2997759, 2025 U.S. Dist. LEXIS 209469 (M.D. Fla. Oct. 24, 2025) ..... 2,4

*Facebook v. Duguid*, 592 U.S. 395 (2021) ..... 6, 15

*FEC v. Ted Cruz for Senate*, 596 U.S. 289 (2022) ..... 14

*Ins. Mktg. Coal. v. FCC*, 127 F.4th 303 (11th Cir. 2025) ..... 15

*Irvin v. Sonic Indus. Servs., LLC*, No. 3:25-cv-00242-LMM, 2026 WL 1098403, 2026 U.S. Dist. LEXIS 90262 (N.D. Ga. Apr. 20, 2026) ..... 2

*James v. Smarter Contact, Inc.*, Case No. 8:25-cv-1657-KKM-SPF, 2026 WL 879244, 2026 U.S. Dist. LEXIS 68492 (M.D. Fla. Mar. 31, 2026) ..... 1,4,5,7

*Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894 (C.D. Ill. 2025) ..... 2,4,8

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) ..... 9,14

*McLaughlin Chiropractic Assocs. v. McKesson Corp.*, 606 U.S. 146 (2025) ..... 9,14

*Mujahid v. Newity*, Case No. 25 C 8012, 2025 U.S. Dist. LEXIS 221088 (N.D. Ill. Nov. 10, 2025) ..... 7

*Niz-Chaves v. Garland*, 593 U.S. 155 (2021) .................................................................. 3

*Radvansky v. 1-800-FLOWERS.COM*, Case No. 1:25-cv-2811-TWT, 2026 WL 456919, 2026 U.S. Dist. LEXIS 32415 (N.D. Ga. Feb. 17, 2026)................................................................ 2

*Radvansky v. Kendo Holdings, Inc.*, Case No. 3:23-cv-00214-LMM, 2026 WL 810929, 2026 U.S. Dist. LEXIS 65154 (N.D. Ga. Feb. 12, 2026)................................................................ 2

*Richards v. Fashion Nova*, Case No. 1:25-cv-01145-TWP-MKK, 2026 U.S. Dist. LEXIS 65696 (S.D. Ind. Mar. 26, 2026) ............................................................................................ 2

*Stockdale v. Skymount Prop. Grp., LLC et. al.*, Case No. 1:25-cv-1282, 2026 WL 591842, 2026 U.S. Dist. LEXIS 42954 (N.D. Ohio Mar. 3, 2026)........................................................ 1,2,4

*West Virginia v. EPA*, 597 U.S. 697 (2022)...................................................................... 14

*Wilson v. Better Mortg. Corp.*, 811 F. Supp. 3d 631 (S.D.N.Y. 2025).......................................... 7

*Yale New Haven Hospital v. Becerra*, 56 F.4th 9 (2d Cir. 2022) ................................................ 5

**Regulations & Statutes**

47 C.F.R. § 64.1200 .........................................................................................*passim*

47 U.S.C. § 227...............................................................................................*passim*

Fla. Stat. § 501.059 ................................................................................................ 5

Tex. Bus. & Com. Code § 302.001.............................................................................. 5

**Administrative Materials**

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CC Docket No. 92-90, Report and Order, 7 FCC Rcd. 8752, ¶ 5 (1992). ........................................... 10, 11, 14

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014 (2003).................................................. 10,12

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Second Report and Order, 38 FCC Rcd. 12247 (2023) ...................................... 9,10,13

Pub. L. No. 108-10, § 3, 117 Stat. 557 (2003)................................................................. 11

Pub. L. No. 108-10, § 4, 117 Stat. 558 (2003)................................................................. 12

Pub. L. No. 108-82, §1, 117 Stat. 1006 (2003)................................................................ 11

89 Fed. Reg. 5098 (Jan. 26, 2024) ..................................................................................... 9

2019 N.C. Sess. Laws 188 ................................................................................................ 5

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Secure Investing Advisors, LLC d/b/a Cavala Funding Solutions ("Cavala"), through counsel, files this Memorandum of Law in support of its Motion to Dismiss Plaintiff's Complaint.

## I. INTRODUCTION

This case should be dismissed because the law Plaintiff is suing under does not apply to text messages. Plaintiff brings this putative class action under Subsection 227(c)(5), or the "do not *call*" subsection, of the Telephone Consumer Protection Act ("TCPA"). That is a private right of action for those who have received "more than one telephone call" within 12 months that qualify as a "telephone solicitation" to their residential phone number. *See* 47 U.S.C. § 227 (c)(5); *see also* Complaint ¶ 20, Dkt No. 1. But Plaintiff's claims collapse under the statute's plain and unambiguous text; Subsection 227(c)(5) applies exclusively to *telephone calls*, and Plaintiff does not allege that Cavala made any such calls to him. Instead, he alleges only that he received text messages, a form of communication that the statute does not cover. Because Congress has not created a private right of action for these text-message communications, Plaintiff's claims fail as a matter of law.

Indeed, following the Supreme Court's recent holding that Courts must "independently—and without any special deference to an agency interpretation—determine a statute's meaning," *Stockdale v. Skymount Prop. Grp., LLC et. al.*, Case No. 1:25-cv-1282, 2026 WL 591842, 2026 U.S. Dist. LEXIS 42954, at *5 (N.D. Ohio Mar. 3, 2026) (citing *McLauglin Chiropractic Assocs. v. McKesson Corp*., 606 U.S. 146, 155 (2025)), courts across the country have dismissed TCPA claims because the term "telephone call" in 47 U.S.C. § 227(c)(5) does not include text messages. *See, e.g.*, *James v. Smarter Contact, Inc*., Case No. 8:25-cv-1657-KKM-SPF, 2026 WL 879244, 2026 U.S. Dist. LEXIS 68492 (M.D. Fla. Mar. 31, 2026) (dismissing claim because

"telephone call" within Subsection 227(c)(5) of the TCPA does not include text messages); *Radvansky v. Kendo Holdings, Inc.*, Case No. 3:23-cv-00214-LMM, 2026 WL 810929, 2026 U.S. Dist. LEXIS 65154 (N.D. Ga. Feb. 12, 2026) (finding that the statutory text of Subsection 227(c)(5) is clear that a text message is not a telephone call).[1]

Congress *could have* expanded Subsection 227(c)(5) to authorize a private right of action for text messages, but it has not, even though it has amended adjacent sections to cover "text messages" explicitly since it enacted the TCPA in 1991. Indeed, in 2018, Congress amended 47 U.S.C. § 227(e), which originally just applied to "a call" made with false or misleading Caller ID. But Congress expressly broadened that subsection in 2018 to now also apply to a "text message sent using a text messaging service," which would have been entirely unnecessary if Congress actually thought that "call" included "text message" all along. *See* 47 U.S.C. § 227(e)(8). But Congress has not taken that necessary step to expand Subsection 227(c)(5). As enacted, Subsection 227(c)(5) provides a private right of action only for receipt of more than one "telephone call," and it does not extend that remedy to text-message communications. Because the communications at issue here fall outside the scope of the private right of action that Congress created, Plaintiff's claim is not cognizable and must be dismissed.

---

[1] *See also Richards v. Fashion Nova*, Case No. 1:25-cv-01145-TWP-MKK, 2026 U.S. Dist. LEXIS 65696 (S.D. Ind. Mar. 26, 2026) (finding text message is not a "telephone call" under Subsection 227(c)(5) of the TCPA); *Stockdale*, 2026 WL 591842, 2026 U.S. Dist. LEXIS 42954 (holding "telephone call" in Section 227(c)(5) does not encompass text messages); *Irvin v. Sonic Indus. Servs., LLC*, No. 3:25-cv-00242-LMM, 2026 WL 1098403, 2026 U.S. Dist. LEXIS 90262, at *4 (N.D. Ga. Apr. 20, 2026) (noting that the text of Subsection 227(c)(5) is clear, "a text message is not a 'telephone call.'"); *Radvansky v. 1-800-FLOWERS.COM*, Case No. 1:25-cv-2811-TWT, 2026 WL 456919, 2026 U.S. Dist. LEXIS 32415 (N.D. Ga. Feb. 17, 2026) (dismissing claim because Subsection 227(c)(5) does not include text messages); *El Sayed v. Naturopathica Holistic Health, Inc.*, Case No. 8:25-cv-00846-SDM-CPT, 2025 WL 2997759, 2025 U.S. Dist. LEXIS 209469 (M.D. Fla. Oct. 24, 2025) (dismissing claim because Subsection 227(c)(5) does not include text messages); *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894 (C.D. Ill. 2025) (same).

## II. LEGAL STANDARD

To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). It must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully." *Den Hollander v. Copacabana Nightclub*, 624 F.3d 30, 33 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility'" and must be dismissed. *Id.*

## III. ARGUMENT

### A. A Text Message is Not a "Telephone Call."

Although Congress did not define "telephone call" in the TCPA, when the statute was enacted in 1991, the term carried a well-understood, ordinary meaning. *See Niz-Chaves v. Garland*, 593 U.S. 155, 160 (2021) (courts interpret statutory terms according to their "ordinary meaning at the time Congress adopted them"). Congress had no need to give "telephone call" any special definition because it had been an everyday experience of Americans for a century. A telephone call involved—and still involves—a phone ringing and a voice connection. There was no written text exchanged by a telephone call in 1991. Cell phones were not yet in widespread use, and commercially available text-message services would not emerge for nearly another decade. It would be a strained and historically inaccurate reading to assume that when Congress referred to "telephone calls" in 1991, it was implicitly addressing "text messages" too.

As several courts have recognized, text messaging was not an available technology in 1991, and thus "telephone call" would not have included text messages when Congress passed

the TCPA. *See*, *e.g.*, *Jones*, 792 F. Supp. 3d at 899-900. Rather, in 1991, a "call" was defined as the "act of calling on the telephone . . . and telephone [was defined as] an instrument for reproducing sounds at a distance." *Stockdale*, 2026 WL 591842, 2026 U.S. Dist. LEXIS 42954, at *5 (citing Merriam-Webster New College Dictionary (9th ed. 1990)).

Thus, "a text message, which does not use a telephone to reproduce sounds at a distance, is not included or embraced in the ordinary public meaning of 'telephone call' from 1991." *James,* 2026 WL 879244, 2026 U.S. Dist. LEXIS 68492, at *6-7; *see also Stockdale*, 2026 WL 591842, 2026 U.S. Dist. LEXIS 42954, at *5 (finding "'telephone call' could not include modern-day text messages because text messages do not use a telephone to reproduce sounds at a distance"). Thus, when Congress created a private right of action for the receipt of certain "telephone calls," the "ordinary meaning" of that phrase did not include text messages. *See also James,* 2026 WL 879244, 2026 U.S. Dist. LEXIS 68492, at *6 ("When determining a statute's meaning, courts seek to afford the law's terms their ordinary meaning at the time Congress adopted them." (citation modified)). "This conclusion—supported by the ordinary public meaning at the time of the provision's enactment—is enough to end this case" *Davis v. CVS Pharm., Inc.*, 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025).[2]

Further confirmation that Subsection 227(c)(5)'s use of the term "telephone call" does not encompass text messages comes from Congress's subsequent amendments, which expressly

---

[2] Even "in today's American parlance, 'telephone call' means something entirely different from 'text message.'" *Jones*, 792 F. Supp. 3d at 899; *see also Davis,* 797 F. Supp. 3d at 1273 ("no ordinary person would think of a text message as a 'telephone call.' This conclusion—supported by the ordinary public meaning at the time of the provision's enactment—is enough to end this case."); *El Sayed*, 2025 WL 2997759, 2025 U.S. Dist. LEXIS 209469, at *3 ("In addition to the fact that in common American English usage, a 'telephone call' and a 'text message' are separate and distinct forms of communication, the term 'text message' appears elsewhere in the TCPA and related amendments, an appearance that confirms Congress understood the pertinent distinction and legislated mindful of the distinction." (citation omitted)).

added the terms "text message" and "text messaging service" to other provisions of Section 227. *See James*, 2026 WL 879244, 2026 U.S. Dist. LEXIS 68492, at *9-10. For instance, in 2018, Congress amended Subsection 227(e) to address Caller ID manipulation and, in doing so, expressly distinguished between "a call made using a voice service" and a "text message sent using a text messaging service." 47 U.S.C. § 227(e)(8)(A)-(B). That deliberate differentiation shows that the original phrase "telephone call" did not include text messages. *See Yale New Haven Hospital v. Becerra*, 56 F.4th 9, 21 (2d Cir. 2022) (noting that "where a statutory scheme has used one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea." (citation modified)).[3]

Likewise, the TCPA's overall structure confirms that Subsection 227(c)(5) does not reach text messages. Subsection 227(a)(4), for example, defines "telephone solicitation" broadly to include "the initiation of a telephone call *or message*," confirming that Congress knew how to extend the statute beyond calls when it wished to do so. 47 U.S.C. § 227(a)(4) (emphasis added). But in Subsection 227(c)(5)'s private right of action, the narrower term "telephone call" is used. *Cf.* 47 U.S.C. § 227(a)(4) *with* 47 U.S.C. § 227(c)(5). That textual choice also signals that Congress did not intend Subsection 227(c)(5)'s private right of action to reach text messages. *See Davis*, 797 F. Supp. 3d at 1274 ("Congress's use of the phrase 'telephone call or message' in a neighboring provision only undermines [plaintiff's] position. It shows that Congress does not use the term 'telephone call' to encompass all 'messages.'").

---

[3] Had Congress intended to include text messages within Subsection 227(c)'s private right of action, it could have amended it at any time to do so, just as several state legislatures have expressly amended their statutes because they recognized that "telephone calls" do not include texts. *See* 2019 N.C. Sess. Laws 188 (amending N.C. Gen. Stat. § 75-101(9) to define "telephone solicitation" as a "voice *or text* communication" (emphasis added)); Fla. Stat. § 501.059(1)(j) (2023) (amending "telephonic sales call" to include calls and texts); Tex. Bus. & Com. Code § 302.001 (as amended in 2025) (same).

Subsection 227(b) makes the same point through its operative provisions. In Subsection 227(b)(1)(A), Congress prohibited making "any call" using specified technology to a range of numbers, including cellular telephones and paging services. That "any call" provision necessarily reaches non-voice communications: in 1991, pagers received numeric or text messages, not voice calls. By contrast, Subsection 227(b)(1)(B) prohibits "any *telephone call* to any residential *telephone line*" using an artificial or prerecorded voice—a formulation expressly tied to voice communications delivered over residential landlines, which did not receive text messages. 47 U.S.C. § 227(b)(1)(B) (emphasis added). Congress thus used the broader term "any call" when addressing a broader set of communications (including messages to pagers), and the narrower term "telephone call" when addressing voice communications.

Congress also regulated fax advertising separately, prohibiting unsolicited advertisements sent to a "telephone facsimile machine," even though those transmissions occur over telephone lines. 47 U.S.C. § 227(b)(1)(C). This all bolsters the point that "telephone call" only includes voice calls. And Subsection 227(c)(5)'s private right of action is limited to receipt of "more than one telephone call." That deliberate choice must be given effect. Because Plaintiff alleges only that he received text messages, not telephone calls, he cannot invoke § 227(c)(5). His claims fail as a matter of law.

The Supreme Court has warned against judicial efforts to retroactively "modernize" the TCPA by stretching terms beyond their original meaning. In *Facebook v. Duguid*, the Court unanimously reversed an expansive interpretation of the TCPA, holding that courts may not rewrite the statute to keep up with changing technology. 592 U.S. 395 (2021). The same logic applies here. If "telephone call" meant "text message," then any communication capable of being transmitted via the phone—emails, app alerts, social media notifications—could arguably fall

within the statute. Congress chose not to go that far by using a term with a fixed contemporaneous meaning in Subsection 227(c)—instead of a *category term* like "all communications"[4]—which also contains other limitations on the private cause of action not present in other subsections of the TCPA.

Decisions that conclude that "text messages" are "telephone calls" under Subsection 227(c)(5) routinely rely on a flawed reading of the TCPA. For example, in *Wilson v. Better Mortg. Corp.*, 811 F. Supp. 3d 631 (S.D.N.Y. 2025), and *Mujahid v. Newity*, the courts mistakenly used the verb form of "call," as opposed to the noun form that Congress used in Subsection 227(c)(5). *See Mujahid v. Newity*, Case No. 25 C 8012, 2025 U.S. Dist. LEXIS 221088, at *4 (N.D. Ill. Nov. 10, 2025); *see also* 47 U.S.C. § 227(c)(5) ("A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State . . ."); *James*, 2026 WL 879244, 2026 U.S. Dist. LEXIS 68492, at *8-9 (noting that courts finding that "call" encompassed text messages for purposes of Subsection 227(c)(5), including this Court in *Wilson*, mistakenly used definitions of the verb form of "call," but in Subsection "227(c)(5), 'call' is used as a noun"). Those decisions then "compound the error by neglecting to consider the modifying effect on 'call' from 'telephone' as understood in 1991." *Id.* at *8. "[T]he modifying effect of "telephone" . . . . clarifies the understanding of the much broader "call[.]" *Id.* at *9.

In sum, the only plausible interpretation of Congress's private right of action in Subsection 227(c)(5) for certain "telephone calls" is that Congress meant what it said—and did

[4] Another example of a category term is "vehicle." That would include gas cars and EVs, even if the latter did not exist when the relevant statute was enacted. But unlike a broad category term like "vehicle," "telephone call" had a specific, limited meaning when the TCPA was enacted in 1991—and continues to have that same meaning today, requiring transmission of sound.

not intend to silently smuggle in text messages, a yet-to-be-created form of communication. "[U]nder a plain reading, S[ubs]ection 227(c)(5) of the TCPA does not regulate text messages." *Jones*, 792 F. Supp. 3d at 899; *see also Davis*, 797 F. Supp. 3d at 1275-76 ("To succeed on his § 227(c)(5) [claim], Davis had to allege that he received at least two 'telephone calls.' He alleged receiving only text messages. And because text messages are not telephone calls, he has not stated a claim."). The Court's inquiry should end here. A text message is not a "telephone call" under the statute's plain language, and thus Plaintiff's Subsection 227(c)(5) claim for an entirely different type of communication fails as a matter of law.

**B. The FCC Did Not Promulgate its Text-Message Regulation Under Its Subsection 227(c) Authority.**

Even if Congress's 1991 reference to "telephone calls" could somehow be stretched to include the then-nonexistent "text message," Plaintiff's claims still fail because they lack the second element required for a private right of action: a telephone call that violates an FCC regulation that was *promulgated under the FCC's Subsection 227(c) statutory authority*. *See* 47 U.S.C. § 227(c)(5) (creating a private right of action for a "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection."). Here, Plaintiff's claims are missing both required components—a "telephone call" *and* a violation of a regulation that the FCC "prescribed under" 47 U.S.C. § 227(c). 47 U.S.C. § 227(c)(5).

Plaintiff alleges that Cavala violated 47 C.F.R. § 64.1200(c)(2) "by making telephonic solicitations[] . . . to the Plaintiff and the National Do-Not-Call Class despite their numbers being on the National Do-Not-Call Registry" Compl. ¶ 72. Plaintiff also alleges that Cavala violated 47 C.F.R. § 64.1200(d) "by making telephonic solicitations[] . . . to the Plaintiff and the Internal Do-Not-Call Class despite having asked [Cavala] to cease its telephonic solicitations." Compl. ¶

84. Yet, those rules—which now must be reviewed under *McLaughlin Chiropractic Assocs. v. McKesson Corp.*, 606 U.S. 146 (2025) and *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024)—were not promulgated under the FCC's long-expired statutory authority in Subsection 227(c).[5] Specifically, 47 C.F.R. § 64.1200(c)(2) and 47 C.F.R. § 64.1200(d) (but only to the extent 47 C.F.R. § 64.1200(d) applies to text messages), were not promulgated under Subsection 227(c). Rather, the FCC only amended Sections 64.1200(c) and (d) in a new rule that took effect in March 2024, when it added the phrase "or text messages" to Section 64.1200(e). *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2023 TCPA Order"), CG Docket No. 02-278, Second Report and Order, 38 FCC Rcd. 12247 (2023); 89 Fed. Reg. 5098 (Jan. 26, 2024) (announcing an effective date of March 26, 2024). Because Subsection 227(c)(5) authorizes suit only for violations of a "regulation promulgated under this subsection," Plaintiff's claim does not satisfy the statute's second, independent requirement.

When Congress passed the TCPA in 1991, it directed the FCC to initiate a rulemaking within 120 days of December 20, 1991, to address "residential telephone subscribers' [] rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). Unlike the temporally open rulemaking authority that Congress gave the FCC in Subsection 227(b), Congress put a clear deadline on the FCC's Subsection 227(c) rulemaking authority: the FCC had to "conclude" its rulemaking under Subsection 227(c)(1) "[n]ot later than 9 months after December 20, 1991[.]" 47 U.S.C. § 227(c)(2); *cf.* 47 U.S.C. § 227(b)(2)(A)-(C) (granting the

[5] In *Loper Bright*, the Supreme Court held that the Administrative Procedure Act "requires courts to exercise their independent judgment in deciding whether an agency has acted within its statutory authority, and courts may not defer to an agency interpretation of the law simply because a statute is ambiguous." 603 U.S. at 369. Rather, courts must "independently interpret the statute and effectuate the will of Congress subject to constitutional limits." *Id.* at 395. With this holding, the Supreme Court overruled *Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) and its progeny.

FCC authority to enact Subsection 227(b) rules with no deadline). Congress also directed the FCC to consider whether it needed additional "authority to further restrict telephone solicitations," and if so, to "propose specific restrictions to Congress[.]" 47 U.S.C. § 227(c)(1)(D).

In 1992, the FCC initiated—and concluded—a rulemaking pursuant to that time-limited grant of Congressional authority.[6] As part of that rulemaking, the FCC adopted only two categories of 227(c) regulations that applied only to telephone calls: (1) call-time restrictions for companies making live telemarketing phone calls, *see* 47 C.F.R. § 64.1200(c)(1), and (2) the "internal do-not-call list" requirement, which obligates companies to honor a consumer's request not to receive further sales calls. *See* 47 C.F.R. § 64.1200(d).

Here, Plaintiff attempts to bootstrap a private right of action from two later FCC orders—both issued long after the FCC completed its 1992 Subsection 227(c) rulemaking, the only rulemaking for which Congress actually created a private right of action. The first order, released in 2003, addressed live telemarketing calls to numbers listed on the FTC's National Do Not Call Registry ("NDNCR"). *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, FCC Rcd. 14014, Appendix A (2003). The second is the FCC's 2023 TCPA Order, in which the agency expanded its interpretation of those 2003 NDNCR-related rules and the "internal do-not-call list" requirement to encompass text messages. *See* 38 FCC Rcd. 12247 ¶ 26. But both of these orders were issued years after Congress's time-limited grant of authority under Subsection 227(c)(5) expired in 1992. Because neither was promulgated "under this subsection," neither can supply the statutory predicate required for a private right of action under 227(c)(5).

---

[6] *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("1992 TCPA Order"), CC Docket No. 92-90, Report and Order, 7 FCC Rcd. 8752, ¶ 5 (1992).

### 1. The FCC's 2003 TCPA Order did not Create any Private Action Under Subsection 227(c).

When Congress enacted the TCPA in 1991, it granted the FCC authority, under Subsection 227(c), to establish "a single national database" compiling the telephone numbers of residential subscribers who objected to receiving telephone solicitations. 47 U.S.C. § 227(c)(3). But Congress required the FCC—if it chose to create such a database—to do so by September 20, 1992. *See* 47 U.S.C. § 227(c)(2). That was the *only* time Congress authorized the FCC to create a national do-not-call database with a corresponding private right of action. The FCC, however, declined to establish such a database by the statutory deadline. *See* 1992 TCPA Order, 7 FCC Rcd. 8752 ¶ 14 (declining to create a national do-not-call database).

It was not until 2003, more than a decade after the FCC's 227(c) rulemaking authority expired, that the FCC promulgated rules relating to a national do-not-call database. But those rules were not issued pursuant to Subsection 227(c). Instead, the FCC adopted rules to implement the FTC's newly created NDNCR,[7] and enacted 47 C.F.R. § 64.1200(c)(2) to align with the FTC's NDNCR rules, pursuant to the Do-Not-Call Implementation Act ("2003 DNC Act"), Pub. L. No. 108-10, § 3, 117 Stat. 557 (2003).[8] Thus, Congress temporarily authorized the FCC to reconcile its rules with the FTC's NDNCR rules, but that authority came from the 2003 DNC Act, and not from Congress's temporary grant of rulemaking authority under the TCPA's Subsection 227(c), which had long expired. Accordingly, because 227(c)(5) authorizes a private right of action only for violations of regulations proscribed under that subsection, no

[7] *See* Pub. L. No. 108-82, §1(a), 117 Stat. 1006 (2003) (Congress providing the FTC with authority "to implement and enforce a national do-not-call registry").

[8] *Id*. § 3 (Congress ordering the FCC, by September 7, 2003, to "issue a final rule" relating to the FTC's NDNCR after consulting and coordinating with the FTC "to maximize consistency with the rule promulgated by the [FTC] (16 C.F.R. § 310.4(b))."). In the 2003 DNC Act, Congress neither mentioned Subsection 227(c) generally, nor the FCC's expired grant of rulemaking authority in Subsections 227(c)(1)-(2) specifically.

Congressionally created private right of action exists for alleged violations of the FCC's 2003 NDNCR-related rules, including 47 C.F.R. § 64.1200(c)(2).[9]

In any event, the FCC's 2003 TCPA Order made clear that its new NDNCR-related rules did not apply to text messages. In the order, the FCC expanded its rules under Subsection 227(b) of the TCPA, which is not at issue here, to equate (or conflate) "call" with "text message," ruling that Congress's Subsection 227(b) proscription "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls." 2003 TCPA Order, 18 FCC Rcd. 14014 ¶ 165 (emphasis added).[10] The express inclusion of SMS messages in its Subsection 227(b) alteration makes it all the more glaring that the following two paragraphs, involving the NDNCR and the internal do-not-call list, made no mention of SMS messages. *Id.* at ¶¶ 166-67. In fact, the FCC used the word "live" *four times* in reference to the telemarketing calls impacted by its new NDNCR-related regulations. *Id.* at ¶ 166. Thus, in 2003 the FCC treated "call" and "SMS" as synonymous *only for purposes of Subsection 227(b)* of the TCPA—i.e., calls to cell phones made with an 'automatic telephone dialing system' or artificial or prerecorded voice (what is colloquially referred to as a "robocall" or "robotext").

[9] Congress and the FCC made clear that the FCC would enforce its new NDNCR-related rules in 47 C.F.R. § 64.1200(c)(2)—not that there would be a private right of action for a violation of that regulation. *See* 2003 DNC Act § 4(b)(5)-(6), 117 Stat. 558 (Congress required the FCC to submit annual reports of "*the enforcement activities of the [FCC]* pursuant to the [TCPA]" and "a review of" *the FCC's enforcement proceedings* under the TCPA. (emphasis added)); *see also* 2003 TCPA Order, 18 FCC Rcd. 14014 ¶ 36 (the FCC explaining that *it* would presume wireless subscribers registered on the NDNCR to be "residential subscribers," but recognizing the need for "further proof of the validity of that presumption should *we* need to take enforcement action." (emphasis added)).

[10] The FCC's only cited authority for that proposition was one of its own Orders, which merely defined what an "SMS" *is*. *Id.* ¶ 165 & n.606 (defining "SMS" and citing Section 6002(B) of the Omnibus Budget Reconciliation Act of 1993, 17 FCC Rcd. 12985, 13051 (2002), which does not mention the TCPA, or purport to regulate SMS).

**2. The FCC's 2023 TCPA Order did not Create a Private Right of Action Under Subsection 227(c).**

Two decades later, the FCC expanded its 2003 TCPA Order, and for the first time included text messages in its internal do-not-call regulations. *See* 2023 TCPA Order, 38 FCC Rcd. 12247 ¶ 26. At that time, the FCC acknowledged that, "[w]hile combating unwanted and illegal calls has long been one of the Commission's top consumer protection priorities, combating unwanted and illegal text messages is a comparatively new focus." *Id.* at ¶ 5. The FCC also noted that, until then, it had only "interpreted 'call' *in section 227(b)(1)(A)* of the [TCPA] to include both voice calls and text messages." *Id.* ¶ 5 & n.8 (emphasis added). The FCC thus acknowledged that its 2023 TCPA Order represented an entirely new rule for purposes of its NDNCR-related and internal do-not-call list rules; therefore, the FCC's promulgation of that new rule did not fall within any statutory authority tied to Congress's 1991 private right of action in Subsection 227(c)(5).[11]

Congress—the only body that can create a private right of action—conferred a private right of action in Subsection 227(c)(5) to any person who has "received more than one *telephone call* within any 12-month period by or on behalf of the same entity in violation *of the regulations prescribed under this subsection*." 47 U.S.C. § 227(c)(5) (emphasis added). The only

[11] In the 2023 TCPA Order, the FCC reasoned that "it would be anomalous to conclude that text messages to wireless numbers are 'calls' for one part of the Commission's TCPA rules [i.e., those under Subsection 227(b)] but not for the DNC protections." 38 FCC Rcd. 12247 ¶ 27. But the "anomalous" treatment of text messages between Subsections 227(b) and 227(c) is a feature—not a bug—of Congress's statutory framework. Congress used different language in Subsections 227(b) and 227(c) of the TCPA for the types of services at issue. Subsection 227(b) is explicitly directed to robocalls to cell phones—devices that later could actually receive text messages—while Subsection 227(c) required a rulemaking, which had to be finished by 1992, about "telephone solicitations" to "residential telephone subscribers," who, to this day, cannot receive text messages on their residential telephones (because you would need the type of phone service regulated under Subsection 227(b), i.e., cell phones).

regulations that the FCC prescribed under *that* subsection of the TCPA—Subsection 227(c), pursuant to the time-limited grant of Congressional authority that expired in 1992—were call-time restrictions and its internal do-not-call list rules applicable to actual telemarketing phone calls to residential phones. *See* 1992 TCPA Order, 7 FCC Rcd. 8752 at Appendix B. Thus, violations of those rules carry a Congressionally authorized private right of action. *See Alexander v. Sandoval*, 532 U.S. 275, 291 (2001) (language in a regulation cannot "conjure up a private cause of action that has not been authorized by Congress. Agencies may play the sorcerer's apprentice but not the sorcerer himself.").

Whatever statutory authority the FCC had to adopt NDNCR-related rules in 2003, or to enlarge them to text messages in December 2023, it had no right in 2003 or 2023 to create new private rights of action under Subsection 227(c)(5). *See id.* at 291; *see also West Virginia v. EPA*, 597 U.S. 697, 723 (2022) (agencies "have only those powers given to them by Congress, and 'enabling legislation' is generally not an 'open book to which the agency [may] add pages and change the plot line.'" (alteration in original)). A federal agency "'literally has no power to act'—including under its regulations—unless and until Congress authorizes it to do so by statute." *FEC v. Ted Cruz for Senate*, 596 U.S. 289, 301 (2022) (quoting *Louisiana Pub. Serv. Comm'n* v. *FCC*, 476 U. S. 355, 374 (1986)). The FCC's long-expired authority under Subsection 227(c)(1) cannot have provided it the necessary authority for its 2023 TCPA Order.

In any event, under the Supreme Court's 2025 and 2024 decisions in *McLaughlin* and *Loper Bright*, courts must apply the statute's plain meaning, not defer to contrary FCC interpretations of its own regulations, which use different language than the private cause of action at issue in this case. *See McLaughlin*, 606 U.S. at 155, 168–69; *Loper Bright*, 603 U.S. at

388–89. As explained above, both in 1991 and today, the ordinary meaning of "telephone call" is a voice call, and the FCC cannot rewrite the TCPA to say otherwise.

For decades, lower courts often erroneously deferred to interpretations by agencies like the FCC, even when they were counterintuitive and changed from administration to administration. Most courts followed the FCC's expansive view of "autodialer," for example. That ended when, as noted above, the Supreme Court unanimously reversed that definition, holding it "must interpret what Congress wrote;" "outdated" as "perhaps the TCPA itself[] may be, that is no justification for eschewing the best reading." *Facebook*, 592 U.S. at 397, 409.

The few circuit court decisions on direct APA challenges to the FCC's TCPA interpretations—which was generally the only way to challenge an FCC interpretation before *McLaughlin*—are in accord. There, the circuit courts reversed far more thoughtful FCC opinions as contrary to the plain text of the TCPA. *See, e.g.*, *Ins. Mktg. Coal. v. FCC*, 127 F.4th 303, 315 (11th Cir. 2025) ("We thus reject the FCC's one-to-one consent restriction" as inconsistent with the statutory definition of "prior express consent"); *ACA Int'l v. FCC*, 885 F.3d 687, 695 (D.C. Cir. 2018) ("[W]e set aside the Commission's explanation of which devices qualify as an ATDS, as well as its understanding of when a caller violates the Act by calling a wireless number previously held by a consenting party but reassigned to a person who has not given consent.").

Here, Plaintiff's Complaint alleges that Cavala violated 47 C.F.R. § 64.1200(c) by sending unsolicited text messages to him after he registered his number with the NDNCR. *See* Compl. ¶¶ 13-19, 23. Plaintiff's claim is about *text messages* to a *cell phone number*. Neither of those two elements are included in the FCC's 1992 regulations promulgated under Subsection 227(c)—FCC rules relating to live sales calls to cellular telephone numbers were not addressed until the FCC's 2003 TCPA Order, and then it took the FCC another twenty years, through its

2023 TCPA Order, to expand its 47 C.F.R. § 64.1200(c) and (d) rules to sales text messages, despite no new grant of statutory authority to do so. Those rules were not promulgated under the FCC's long-expired statutory authority under Subsection 227(c) of the TCPA, and do not provide Plaintiff with a private right of action to bring a claim under Subsection 227(c)(5) for his alleged receipt of text messages that allegedly violated 47 C.F.R. § 64.1200(c)(2). As such, Plaintiff is not asserting a claim for a violation of a "regulation promulgated under this subsection," 47 U.S.C. § 227(c)(5), foreclosing his private right of action on this second, independent ground. Plaintiff's Complaint must be dismissed.

## IV. CONCLUSION

The Court should dismiss Plaintiff's TCPA Complaint with prejudice because Plaintiff lacks a private right of action for the text-messages at issue under Subsection 227(c)(5).

Dated: June 26, 2026

Respectfully submitted,

By Counsel
/s/ *Joseph P. Bowser*
Joseph P. Bowser (*pro hac vice*)
ROTH JACKSON
1519 Summit Ave., Suite 102
Richmond, VA 23230
Tel: 804-441-8701
Email: jbowser@rothjackson.com

*Counsel for Defendant*

**CERTIFICATION OF WORD COUNT**

Pursuant to Local Rule 7.1(c), the word count function of Microsoft Word identified that this memorandum contains 5,410 words, inclusive of footnotes, and is therefore in compliance with Local Rule 7.1(c).

I declare under penalty of perjury that the foregoing statements made by me are true and correct.

Dated: June 26, 2026

/s/ *Joseph P. Bowser*
Joseph P. Bowser

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of June, 2026, I caused a copy of the foregoing document to be served upon Plaintiff via the Court's ECF filing system:

Cassandra P. Miller
Strauss Borrelli PLLC
980 N Michigan Ave., Suite 1610
Chicago, IL 60611
Tel: 872-263-1100
Email: cmiller@straussborrelli.com

*Counsel for Plaintiff*

/s/ *Joseph P. Bowser*
Joseph P. Bowser