**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**AT FOLEY SQUARE**

| | |
|---|---|
| KEVIN BACHHUBER, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SECURE INVESTING ADVISORS, LLC<br>*doing business as:*<br>CAVALA FUNDING SOLUTIONS<br><br>Defendant. | No. 1:26-cv-03502-JAV-VF<br><br>Honorable Judge Jeannette A. Vargas<br><br>Honorable Magistrate Judge Valerie Figueredo |

**PLAINTIFF'S BRIEF IN OPPOSITION TO**
**<u>DEFENDANT'S MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

**Page(s)**

I. Introduction .......... 1

II. Background .......... 2

III. Argument .......... 2

A. The Do Not Call List Provisions in TCPA Section 227(c) Authorize the FCC to Prohibit Text Messages .......... 3

1. The plain meaning of the word "call" includes text messages. .......... 3

2. That interpretation of the word "call" aligns Section 227(c)'s private right of action with its substantive provisions. .......... 6

3. The other Federal Courts in New York and elsewhere in the Second Circuit that have considered this question got it right, including the Second Circuit Court of Appeals. .......... 7

4. Cavala Funding's arguments for a narrower interpretation are unpersuasive .......... 10

B. Section 227(c) of the TCPA Provides a Private Right of Action for Calling a Number on the Do Not Call Registry. The Regulation Sued Under was Promulgated Under Section 227(c). .......... 14

IV. Conclusion .......... 25

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Alexander v. Sandoval*,
532 U.S. 275 (2001) .... 21

*Bank v. Simple Health Plans LLC*,
2019 U.S. Dist. LEXIS 215228 (E.D. NY. 2019). .... 8

*Bowen v. Georgetown Univ. Hosp.*,
488 U.S. 204 (1988) .... 15, 22

*Cacho v. Amity One Debt Relief*,
2024 WL 4594177 (W.D. Tex. Oct. 24, 2024) .... 17

*Campbell-Ewald Co. v. Gomez*,
136 U.S. 663 (2016). .... 5, 7

*Carlton v. PDR Network, LLC*,
80 F.4th 466 (4th Cir. 2023) .... 19

*Cordoba v. DirecTV, LLC*,
942 F.3d 1259 (11th Cir. 2019) .... 22

*Davis v. CVS Pharmacy, Inc.*,
797 F. Supp 3d 1270 (N.D. Fla. 2025) .... 10, 12

*Diamond v. Chakrabarty*,
447 U.S. 303 (1980) .... 11

*DISH Network L.L.C. v. Krakauer*,
140 S. Ct. 676 (2019). .... 14

*Duran v. La Boom Disco, Inc.*,
955 F.3d 279 (2d Cir. 2020) .... 7

*Ford v. NaturaLawn of Am., Inc.*,
2024 WL 3161762 (D. Md. June 25, 2024) .... 17

*Henson v. Santander Consumer USA Inc.*,
582 U.S. 79 (2017 .... 4

*Howard v. Republican Nat'l Comm.*,
164 F.4th 1119 (9th Cir. 2026) .... *passim*

*Hulce v. Zipongo, Inc.*,
132 F.4th 490 (7th Cir. 2025)........................................................................................12

*In the Matter of Emanuel "Manny" Hernandez (Click Cash Mktg., LLC & Rock Solid Traffic)*,
2018 WL 6830220 (FCC Enf't Bureau Dec. 21, 2018)...........................................................5

*Jackson v. Caribbean Cruise Line, Inc.*,
88 F. Supp. 3d 129 (E.D. NY. 2015)."...........................................................................8

*Jones v. Blackstone Medical Services*,
792 F. Supp. 3d 894 (C.D. Ill. 2025)...........................................................................10

*Krady v. Eleven Salon Spa*,
2017 U.S. Dist. LEXIS 1201397 (E.D. N.Y. 2017).........................................................8

*Krakauer v. Dish Network, L.L.C.*,
925 F.3d 643 (4th Cir. 2019)........................................................................................14

*Loper Bright Enterprises v. Raimondo*,
603 U.S. 369 (2024) ................................................................................................*passim*

*Lozano v. Twentieth Century Fox Film Corp.*,
702 F. Supp. 2d 999 (N.D. Ill. 2010) ..........................................................................4, 5, 11

*Marbury v. Madison*,
5 U.S. 137 (1803) ........................................................................................................18

*McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*,
606 U.S. 146 (2025). .......................................................................................................5

*Melito v. Am. Eagle Outfitters, Inc.*,
2015 U.S. Dist. LEXIS 160349 (S.D.N.Y. Nov. 30, 2015) ....................................................7

*Melito v. Experian Mktg. Sols., Inc.*,
923 F.3d 85 (2d Cir. 2019)..........................................................................................7, 8

*Metten v. Town Sports Int'l, LLC*,
2019 U.S. Dist. LEXIS 47138 (S.D.N.Y. Mar. 21, 2019)......................................................8

*Mujahid v. Newity, LLC*,
2025 WL 3140725 (N.D. Ill. Nov. 10, 2025) ...................................................................4, 7, 13

*New Prime, Inc. v. Oliveira*,
586 U.S. 139 (2019) ......................................................................................................11

*Pepper v. GVG Cap. LLC*,
677 F. Supp. 3d 638 (S.D. Tex. 2023) ...........................................................................13

*Perrin v. United States*,
444 U.S. 37 (1979) .......... 3

*Radvansky v. Kendo Holdings, Inc.*,
744 F. Supp. 3d 1314 (N.D. Ga. 2024) .......... 19

*Ross v. Blake*,
578 U.S. 632 (2016) .......... 14

*Rotberg v. Jos. A. Bank Clothiers, Inc.*,
345 F. Supp. 3d 466 (S.D.N.Y. 2018) .......... 8

*Satterfield v. Simon & Schuster, Inc.*,
569 F.3d 946 (9th Cir. 2009) .......... 3, 4, 6

*Siringi v. Parkway Fam. Mazda/Kia*,
2023 WL 7130867 (S.D. Tex. Oct. 30, 2023) .......... 20

*Taha v. Momentive Software, Inc.*,
2026 U.S. Dist. LEXIS 54376 (C.D. Cal. 2026) .......... 13

*Warciak v. Subway Rests., Inc.*,
949 F.3d 354 (7th Cir. 2020) .......... 4

*Wilson v. Better Mortgage Corp.*,
2025 WL 3493815 (S.D.N.Y. Dec. 5, 2025) .......... *passim*

*Wilson v. Easy Spirit, LLC*,
2026 U.S. Dist. LEXIS 69059 (D. Conn. Mar. 31, 2026) .......... 1, 9

*Wilson v. MEDVIDI Inc.*,
2025 WL 2856295 (N.D. Cal. Oct. 7, 2025) .......... 7, 10, 13

*Wilson v. Skopos Financial, LLC*,
2025 WL 2029274 (D. Or. July 21, 2025). .......... 7

**FCC Materials**

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*
("1992 TCPA Order"), 7 FCC Rcd. 8752 .......... 17, 18

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*
("2003 TCPA Order"), 18 FCC Rcd. 14014 .......... 5, 22, 24

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,
30 FCC Rcd. 7961, 8020 (2015) .......... 5

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 38 FCC Rcd. 12247 (2023) .......... 5

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 88 F FCC Rcd. 20800, 20802 (2023) .......... 5

**Rules & Regulations**

47 C.F.R. § 64.1200 .......... *passim*

47 C.F.R. § 64.1200(c).......... *passim*

**Statutes**

15 U.S.C. § 6153 .......... *passim*

47 U.S.C. § 227 .......... *passim*

47 U.S.C. § 227(a) .......... *passim*

47 U.S.C. § 227(b) .......... *passim*

47 U.S.C. § 227(c) .......... *passim*

47 U.S.C. § 227(d) .......... 15, 21

47 U.S.C. § 227(e) .......... *passim*

47 U.S.C. § 227(i) .......... 15, 21

**Other Authorities**

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 278 (2012).......... 16, 21, 24

House Report 102–317, 102d Cong., 1st Sess. (1991) at 20. .......... 17

House Report 108–8, 108th Cong., 1st Sess. (2003) at 2-3 .......... 19

*"Message"*, *Black's Law Dictionary* (6th ed. 1990).......... 3, 6

*"Message"*,
*Oxford English Dictionary* (2d ed. 1989)........................................................................ 3, 6

*"Message"*,
*Random House Webster's College Dictionary* (9th ed. 1991)................................................ 3, 6

## I. INTRODUCTION

Defendant Secure Investing Advisors, LLC d/b/a Cavala Funding Solutions ("Defendant" or "Cavala Funding") asks this Court to hold that telemarketing text messages are not "telephone calls" under the Telephone Consumer Protection Act's ("TCPA") National Do Not Call ("DNC") provisions. If accepted, Defendant's position would create a sweeping loophole, allowing telemarketers to evade the National Do Not Call Registry simply by sending unsolicited text messages instead of placing voice calls. That result cannot be reconciled with the TCPA's text, structure, or purpose, the Federal Communications Commission's longstanding implementation of the statute, or the overwhelming weight of controlling and persuasive authority.

Defendant's principal argument—that text messages cannot qualify as "telephone calls" because they were not commonplace in 1991—rests on a flawed premise. The relevant question is not whether Congress specifically anticipated text messaging, but whether text messages fall within the ordinary meaning of the statutory language Congress enacted. As the Supreme Court has repeatedly explained, statutes routinely apply to technologies developed after enactment so long as they fall within the ordinary meaning of the statutory text. Here, contemporaneous dictionaries, the TCPA's text and structure, and decades of judicial authority confirm that they do.

The Second Circuit has long recognized that text messages are "calls" under the TCPA because they inflict the same privacy and nuisance harms Congress sought to prevent. Consistent with that understanding, Judge Engelmayer recently rejected the very argument Defendant advances here, holding that telemarketing text messages constitute "telephone calls" under § 227(c)(5). *Wilson v. Better Mortgage Corp.*, No. 25 Civ. 5503, 2025 WL 3493815 (S.D.N.Y. Dec. 5, 2025). Judge Russell reached the same conclusion only months later in *Wilson v. Easy Spirit, LLC*, concluding that Defendant's interpretation cannot be reconciled with the statute's text or purpose.

Defendant's second argument fares no better. The TCPA expressly authorizes a private right of action for persons who receive more than one telephone solicitation "in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5). The National Do Not Call Registry regulations were promulgated pursuant to the FCC's authority under § 227(c), exactly as Congress directed, and courts have permitted private enforcement of those regulations for more than two decades. Defendant identifies no statutory text, rulemaking history, or precedent supporting its novel assertion that those regulations somehow fall outside § 227(c).

Because Defendant's arguments cannot be reconciled with the TCPA's text, structure, and purpose, the FCC's longstanding implementation of the statute, or controlling and persuasive authority, the Motion to Dismiss should be denied.

## II. BACKGROUND

The TCPA authorizes the FCC to regulate telephone solicitations to protect residential telephone subscribers' privacy rights. 47 U.S.C. § 227(c)(1). Pursuant to that authority, the FCC established the National Do Not Call Registry and promulgated regulations prohibiting telephone solicitations to numbers listed on the Registry. *See* 47 C.F.R. § 64.1200(c). Defendant markets business financing products through telemarketing. ECF No. 1 ¶¶ 41–45. Plaintiff is a residential cellular telephone subscriber whose number has been registered on the National Do Not Call Registry since March 17, 2012. *Id.* ¶¶ 21–23. Despite that registration, Defendant sent Plaintiff multiple unsolicited telemarketing text messages promoting its financing services. *Id.* ¶¶ 46–52.

## III. ARGUMENT

Cavala Funding contends that the word "call" in § 227(c)(5) excludes text messages. That argument cannot be reconciled with the ordinary meaning of the statutory text, the structure and purpose of § 227(c), the FCC's longstanding interpretation, or controlling and persuasive precedent. Properly construed, § 227(c) authorizes the FCC to prohibit telemarketing text

messages to numbers listed on the National Do Not Call Registry.

### A. The Do Not Call List Provisions in TCPA Section 227(c) Authorize the FCC to Prohibit Text Messages

#### 1. The plain meaning of the word "call" includes text messages.

The starting point is the statute's text, which confirms that "call" includes text messages. To interpret a statutory term, courts look to the ordinary meaning of the word near in time to the statute's enactment, including by looking at contemporaneous dictionaries. *See, e.g. Perrin v. United States*, 444 U.S. 37, 42, 100 S. Ct. 311, 62 L. Ed. 2d 199 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning. Therefore, we look to the ordinary meaning of the term . . . at the time Congress enacted the statute . . . . " (citation omitted)).

Courts have long recognized that the word "call" in the TCPA refers to any attempt to communicate by telephone, including text messages. That's because the contemporaneous "plain and ordinary meaning in this context" of "the statutory term 'call'" is "to communicat[e] with or an attempt to get in communication with a person by telephone." *Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, 1124 (9th Cir. 2026) (quoting *Satterfield*, 569 F.3d at 953–54 & n.3 and *Webster's Third New International Dictionary* (1981 ed.)).

This basic definition of the word "call," which is the relevant one given the context and the word's pairing with "telephone" in section 227(c)(5), appears in many dictionaries from around the time of the TCPA's passage. *See, e.g.*, *Random House Webster's College Dictionary* (1991) ("to communicate or try to communicate with by telephone"); *Oxford English Dictionary* (2d ed.1989) ("a summons or communication by telephone"). "The contemporary definition of 'telephone call' was therefore not limited to oral or vocal communications. It encompassed any communication made using a telephone." *Wilson v. Better Mortgage Corp.*, No. 25 Civ. 5503,

2025 WL 3493815, at *5 (S.D.N.Y. Dec. 5, 2025).

Courts have likewise recognized that the contemporaneous definition identified in *Satterfield* reflects the meaning Congress intended in 1991. See *Better Mortgage*, 2025 WL 3493815, at *5; *Lozano*, 702 F. Supp. 2d at 1007. Because text messaging is communication by telephone, it plainly falls within that ordinary meaning. *Howard*, 164 F.4th at 1123–24. The established definition of "telephone call" in the TCPA therefore readily encompasses texts. Indeed, both the Seventh and Ninth Circuits have said, in cases alleging violations of section 227(b), that "[t]ext messages to a cellular telephone qualify as a 'call' within the meaning of the statute." *Warciak v. Subway Rests., Inc.*, 949 F.3d 354, 356 (7th Cir. 2020); *see Howard*, 164 F.4th at 1123–24; *Satterfield*, 569 F.3d at 954. And, absent contrary evidence, a statutory word or phrase is presumed to bear a consistent meaning throughout a statute. *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 85 (2017). So the consensus meaning of the word "call" in section 227(b), as encompassing texts, "supports the interpretation that the term 'call' as used in § 227(c) also encompasses 'text messages.'" *Mujahid*, 2025 WL 3140725, at *2.

The meaning of the word "call" is further confirmed by the neighboring autodialer provisions in § 227(b) of the original TCPA. There, Congress repeatedly uses the term "call" in provisions prohibiting automatic dialing technology and robocalls. Most notably, section 227(b) prohibits using autodialer or robocall technology "to make any call … to any telephone number assigned to a paging service." 47 U.S.C. § 227(b)(1)(A)(iii). A typical paging device in the early 1990s would have displayed an incoming message as written text—usually displaying a phone number to call.[1] So the use of the word "call" in connection with pagers in section 227(b)

---

[1] *See, e.g.*, Paging Network, Inc., *Annual Report*, 8 (1991), https://perma.cc/W6UW-UEM2 (noting that 92 percent of the company's pagers could "transmit a numeric message such as a telephone or account number").

establishes "that the term 'call' cannot invoke only the common usage … in which a 'call' refers to oral communication between two parties via telephone." *Lozano*, 702 F. Supp. 2d at 1005.

The FCC has long endorsed that interpretation of the word "call." The agency determined as early as 2003 that when the TCPA says "call," it must mean not just traditional voice calls but also modern text messages. 18 FCC Rcd. 14014, 14115 ¶ 165 (Jul. 3, 2003). As the FCC recognized then, the statutory text "encompasses both voice calls and text calls to wireless numbers." *Id.* And the FCC has consistently adhered to that position ever since. *See* 30 FCC Rcd. 7961, 8020 ¶¶ 115–16; *Hernandez*, 2018 WL 6830220, at *1 ¶ 3*;* 88 Fed. Reg. 20800, 20802 ¶ 6; 38 FCC Rcd. 12247, 12256–57 ¶ 26.

Indeed, because it has been broadly understood for decades that the word "call" in the TCPA includes texts, courts have commonly treated that interpretation as obvious and uncontroversial. See *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call.'"). That remains true after *McLaughlin* and *Loper Bright*. In *Howard*, the Ninth Circuit revisited the issue under de novo review and again concluded that text messages constitute "calls" under the TCPA based on the statute's text. 164 F.4th at 1123–24. Defendant also argues that the phrase "telephone call," rather than simply "call," limits § 227(c)(5) to voice communications. But contemporaneous dictionaries do not support that distinction. As Judge Engelmayer recently explained, the ordinary meaning of "telephone call" in 1991 was simply a communication made by telephone—not exclusively an oral communication. *Wilson v. Better Mortgage Corp.*, No. 25 Civ. 5503, 2025 WL 3493815, at *5 (S.D.N.Y. Dec. 5, 2025). That conclusion accords with the contemporaneous dictionaries discussed above and the longstanding understanding that the TCPA's use of the word "call" encompasses communications transmitted by telephone, including text messages.

### 2. That interpretation of the word "call" aligns Section 227(c)'s private right of action with its substantive provisions.

Much of Cavala Funding's argument focuses on the single use of the word "call" in section 227(c)(5). But reading section 227(c)(5)'s private right of action in context with the substantive Do Not Call List provisions of section 227(c) further confirms that text messages are covered.

To see why, start with the core of section 227(c)—its prohibition on "making or transmitting a telephone solicitation to the telephone number of any subscriber" on the Do Not Call List. 47 U.S.C. § 227(c)(3)(F). Text messages, of course, are "ma[de] or transmitt[ed]" to a "telephone number." *Id*. § 227(e)(8)(C). As explained above, "the ordinary, contemporary, and common meaning" of the word "call" in the TCPA includes text messages. *Satterfield*, 569 F.3d at 953–54 & n.3; *see supra*, Part I.A. And contemporary definitions of the word "message" do too—a message in 1991 was "[a]ny notice, word, or communication, *no matter the mode and no matter how sent*." *Message*, *Black's Law Dictionary* (6th ed. 1990), https://perma.cc/MTC3-H47K (emphasis added).[2] So "call" and "message" both describe communication with a phone, and neither differentiates between oral and written mediums.

Finally, the purpose of the Do Not Call List provisions further supports that interpretation. Congress's stated goal was "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). "[A] voice message or a text message are not distinguishable in terms of being an invasion of privacy." *Satterfield*, 569 F.3d at 954; *accord Howard*, 164 F.4th at 1124; *Mujahid*, 2025 WL

---

[2] *See also, e.g.*, *Message*, *Random House Webster's College Dictionary* (9th ed. 1991) ("a communication delivered *in writing*, speech, by means of signals, etc.") (emphasis added); *Message*, *Oxford English Dictionary* (2d ed. 1989) ("an oral *or written* communication sent from one person to another") (emphasis added).

3140725, at *2; *Medvidi*, 2025 WL 2856295, at *3; *Skopos Fin., LLC*, 2025 WL 2029274, at *4. Indeed, nothing in the statute gives any suggestion that Congress thought "oral messages were more invasive or objectionable than written ones." *Medvidi*, 2025 WL 2856295, at *3.

**3. The other Federal Courts in New York and elsewhere in the Second Circuit that have considered this question got it right, including the Second Circuit Court of Appeals.**

Consistent with the statute's text and structure, courts—particularly within the Second Circuit—have overwhelmingly held that text messages qualify as calls under the TCPA. Defendant's position would undermine that system if text messages were excluded from § 227(c)'s protections, telemarketers could simply bypass the Registry by shifting from voice calls to texts. Luckily for consumers, the federal courts in the Southern District and Circuit have gotten the analysis correct. This starts with the Second Circuit Court of Appeals. First, in *Duran v. La Boom Disco, Inc.,* 955 F.3d 279, 280 (2d Cir. 2020) the court explained, "[i]t is undisputed that '[a] text message to a cellular telephone . . . qualifies as a 'call' within the compass of [the TCPA].' *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667, 193 L. Ed. 2d 571 (2016). Moreover, an unwanted text message is, for standing purposes, an injury-in-fact. *See Melito v. Experian Mktg. Solutions, Inc.*, 923 F.3d 85, 93 (2d Cir. 2019) (noting that 'text messages, while different in some respects from the receipt of calls or faxes specifically mentioned in the TCPA, present the same 'nuisance and privacy invasion' envisioned by Congress when it enacted the TCPA')." Nothing in *Loper Bright* undermines *Melito* or *Duran*. Those decisions rested principally on statutory interpretation and Supreme Court precedent, not Chevron deference.

It is no surprise then that "in this Circuit, district courts have treated text messages as 'calls' within the meaning of the TCPA. *See Melito v. Am. Eagle Outfitters, Inc.,* No. 14 CV 02440, 2015 U.S. Dist. LEXIS 160349, 2015 WL 7736547, at *4 (S.D.N.Y. Nov. 30, 2015) ('The plain language of section 227(b)(1)(A)(iii) imposes liability upon persons that 'make' a telephone call or

text.'); *see also Jackson v. Caribbean Cruise Line, Inc.,* 88 F. Supp. 3d 129, 135 (E.D. NY. 2015)." *Krady v. Eleven Salon Spa*, 2017 U.S. Dist. LEXIS 120139, *7 (E.D. N.Y. 2017). "Courts have consistently recognized that a text message constitutes a call within the meaning of the statute. *See, e.g.*, *Rotberg v. Jos. A. Bank Clothiers, Inc.*, 345 F. Supp. 3d 466, 474 (S.D.N.Y. 2018); *Metten v. Town Sports Int'l, LLC*, No. 18-CV-4226 (ALC), 2019 U.S. Dist. LEXIS 47138, 2019 WL 1299939, at *2 (S.D.N.Y. Mar. 21, 2019). Therefore, the text message that Plaintiff received qualifies as a call for which TCPA liability may lie." *Bank v. Simple Health Plans LLC*, 2019 U.S. Dist. LEXIS 215228, *13 (E.D. NY. 2019).

Indeed, as mentioned above, Judge Engelmayer recently rejected the very argument very argument Defendant advances here. In *Wilson v. Better Mortgage Corp.*, No. 25 Civ. 5503, 2025 WL 3493815, at *5 (S.D.N.Y. Dec. 5, 2025), the court concluded that telemarketing text messages constitute "telephone calls" under § 227(c)(5). In reaching that conclusion, the court relied heavily on Second Circuit precedent, explaining:

> In *Melito v. Experian Mktg. Sols., Inc.,* 923 F.3d 85, 88 (2d Cir. 2019), the Circuit addressed whether plaintiffs' receipt of unsolicited text messages, absent any other injury, was sufficient to demonstrate injury-in-fact to confer Article III standing…It reasoned, in part: '[T]ext messages, while different in some respects from the receipt of calls or faxes specifically mentioned in the TCPA, present the same 'nuisance and privacy invasion' envisioned by Congress when it enacted the TCPA.'" (Order at 12-13.)

*Id.* Judge Engelmayer further explained that limiting § 227(c) to voice calls while construing § 227(b) to cover both voice calls and text messages would create an "irrational asymmetry at odds with the statute's text and structure" and would conflict with the Second Circuit's recognition "that 'the nuisance and privacy invasion attendant on spam texts are the very harms with which Congress was concerned when enacting the TCPA.'" *Id*. at *15

Judge Engelmayer's reasoning was recently reinforced by Judge Russell in *Wilson v. Easy*

*Spirit, LLC*, 2026 U.S. Dist. LEXIS 69059 (D. Conn. Mar. 31, 2026), which likewise rejected the same arguments Defendant raises here. After reviewing contemporaneous dictionary definitions and the TCPA's text and purpose, Judge Russell concluded:

> As other courts have found, the relevant definition of "call" in Webster's Dictionary from the time of the TCPA's passage in 1991 defines "call" as "to get or try to get into communication by telephone." *Cole*, No. 25-3531, at 1 n.1 (quoting Webster's Ninth New Collegiate Dictionary 197 (1990)). Other contemporary dictionaries use similar definitions. See Webster's Third New World Dictionary 198 (1988) ("[T]o communicate with by telephone").
>
>> The contemporary ordinary meaning of the word "call" is therefore not limited to a voice call. Call, in this context, means to "get or try to get into communication" using a telephone. A text message is sent using a cellular telephone to "get or try to get into communication" with another person…as other district courts have found:
>>
>> [T]he fact that text messages had not yet been invented when Congress wrote the TCPA does not foreclose that it intended for the statute to cover future technology. To the contrary, the Second Circuit has recognized, as to § 227(b), that "the nuisance and privacy invasion attendant on spam texts are the very harms with which Congress was concerned when enacting the TCPA"—notwithstanding that that mode of telephone communication did not yet exist. *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 88 (2d Cir. 2019). That text messages did not exist when Congress enacted the TCPA also explains why Congress did not refer specifically to that technology, instead using the broader term "telephone call." See *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) ("As we have said before, the fact that a statute can be 'applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth.'" (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 499 (1985)).

Finding Judge Engelmayer's analysis persuasive, Judge Russell likewise held that text messages qualify as "telephone calls" for purposes of § 227(c)(5). *Easy Spirit, LLC*, 2026 U.S. Dist. LEXIS at *12-14. This Court should do the same. In doing so, Judge Russell confirmed that the TCPA's text, structure, and purpose all support treating text messages as "calls" under § 227(c) and that excluding them would undermine the statute's consumer-protection framework.

The Second Circuit and district courts within it have spoken with one voice: text messages qualify as "calls" under the TCPA and are subject to the same restrictions as voice solicitations. Excluding texts from the Registry would nullify Congress's protections, allow telemarketers to exploit the dominant form of communication today, and erode consumer trust. Because the statutory text, the FCC's consistent interpretation, and precedent all confirm that texts fall within the TCPA's scope, Defendant's attempt to carve out an exception must be rejected.

**4. Cavala Funding's arguments for a narrower interpretation are unpersuasive.**

Defendant's contrary arguments rely on misreadings of the statute, selective quotations, and flawed interpretive assumptions. Cavala Funding would have this Court interpret the Do Not Call List provisions more narrowly, insisting that the word "call" in section 227(c)(5) can only mean a voice communication and therefore the statute categorically excludes text messages. The cases it asserts show support for its arguments include *Jones v. Blackstone Medical Services*, 792 F. Supp. 3d 894 (C.D. Ill. 2025)—which is currently on appeal before the Seventh Circuit—and *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp 3d 1270 (N.D. Fla. 2025), but none of the arguments made by Cavala Funding or in those cases are persuasive.

Consider first how Cavala Funding reads the word "call" in section 227(c)(5). It repeats a few basic arguments for reading that word as implicitly limited to voice calls. But all of them go about interpreting the statute wrong.

First, Cavala Funding insists that "call" cannot encompass text messages because in 1991 text messages did not exist. *Jones*, 792 F. Supp. 3d at 899 ("Text messaging was not an available technology in 1991")). That's not how statutory interpretation works. It's true that text messaging was not mainstream in 1991, so Congress didn't have texting specifically in mind. *See Medvidi*, 2025 WL 2856295, at *2. But it is black-letter law that statutes are not "confined to the particular

[applications] contemplated by the legislators." *Diamond v. Chakrabarty*, 447 U.S. 303, 315–16 (1980) (collecting cases). Instead, "statutes must be permitted to apply to technologies not in existence when a statute was drafted." *Lozano*, 702 F. Supp. 2d at 1008.

Cavala Funding next argues that no ordinary speaker today would describe a text message as a "telephone call." But modern colloquial usage is beside the point. Courts determine statutory meaning based on the ordinary meaning at enactment, not present-day intuition. *Howard*, 164 F.4th at 1123–25; *New Prime*, 586 U.S. at 114–16. Thus, the relevant question is whether text messages fell within the ordinary meaning of "telephone call" in 1991—not how speakers describe them today. *Howard*'s focus on the meaning of "call" as contemporaneous with the TCPA's passage follows the Supreme Court's instruction that modern colloquial usage is of no consequence because "every statute's meaning is fixed at the time of enactment." *Loper Bright*, 603 U.S. at 400. That's because, when language has evolved since a statute's enactment, current usage can be misleading.[3] For example, in *New Prime, Inc. v. Oliveira*, the Supreme Court explained that the statutory term "contracts of employment" in the Federal Arbitration Act nowadays "might call to mind only agreements between employers and employees," and thus exclude independent contractors. 586 U.S. at 114. But that "modern intuition" did not match the "evidence of the term's meaning at the time of the Act's adoption," which revealed that "'contract of employment' usually meant nothing more than an agreement to perform work." *Id*. The Supreme Court therefore held that the statutory exception at issue reached not just conventional "employees," as modern parlance

---

[3] Most people wouldn't use the word "call" the way the TCPA does in casual conversation, especially nowadays. In 2025, text messages are ubiquitous, and society has developed a whole vocabulary around them—think "emoji," "group chat," "read receipt," and so forth. As part of that texting-specific lexicon, we are now very accustomed to saying "text message" or just "text" to describe written messaging between phones.

might suggest, but also modern independent contractors, as definitions from the time of the statute's enactment showed. *See id.* at 114–16. *New Prime* illustrates that when there's a mismatch between modern intuitions and the original meaning at the time of enactment, the latter is what controls—not (as Cavala Funding's cases put it) how an "ordinary person would think of a text message" today. *Davis*, 797 F. Supp. 3d at *1273.

If Congress wanted to limit *only* the private right of action in section 227(c)(5) to voice communications, implicitly doing so by using the word "call" would have been a strange way to go about it. After all, the word "call" *does* include textual communication in other provisions of the statute. *See supra*, Part I.A. If Congress intended to cabin section 227(c)(5)'s private right of action to *exclude* text messages, it wouldn't have done so by using a term that elsewhere *includes* them.

Because it's doubtful that Congress intended section 227(c)(5) to have a narrower scope than the Do Not Call List regulations it exists to enforce, the much better reading of "call or message" in section 227(a)(4) is that it instead signals Congress's intent to inclusively define the kinds of "telephone solicitations" that can be prohibited. The definition of "telephone solicitation" focuses not on a communication's form but on whether it has "the purpose of encouraging" various kinds of commercial transactions. 47 U.S.C. § 227(a)(4); *see, e.g.*, *Hulce*, 132 F.4th at 497–500 (Do Not Call List liability turned on whether a text message had the requisite commercial purpose).

At the same time, the statute uses broad and inclusive language to describe how such a communication might be conveyed—the FCC is directed to prohibit "making *or* transmitting" a telephone solicitation to "any" listed number, and a telephone solicitation is a "call *or* message" that is "transmitted to *any* person." 47 U.S.C. § 227(a)(4), (c)(3)(F) (emphases added). Congress presumably used all that broad and disjunctive language to capture a wide range of communication

mediums, including text messages. *See Pepper v. GVG Cap. LLC*, 677 F. Supp. 3d 638, 643 (S.D. Tex. 2023) (rejecting an argument that "text messages are not actionable" under section 227(c) because it "fails in the face of the statutory text, which refers to 'telephone call[s] or message[s]'"). The statutory definition of "telephone solicitation" therefore "makes clear that Congress was more concerned with the purpose of the telephone communications … than the form in which those communications are transmitted." *Medvidi*, 2025 WL 2856295, at *3; *Mujahid*, 2025 WL 3140725, at *2 (same). The Second Circuit has been clear that 227(b) regulates text messages as discussed above.

Nor does Cavala Funding provide any reason why "call" in section 227(b) covers text messages, but "telephone call" in section 227(c) does not. In *Taha v. Momentive Software, Inc.*, the court rejected the identical argument, explaining that contemporaneous dictionaries defined "call" as communicating "by telephone," making the phrase "telephone call" consistent with, rather than narrower than, the ordinary meaning of "call." The court further observed that if Congress intended to limit § 227(c)(5) to audible communications, it knew how to do so by using the word "voice," as it did elsewhere in the TCPA. 2026 U.S. Dist. LEXIS 54376, at *7–9. This Court should hold the same. Defendant's primary textual argument—that a "call" must be limited to sound-based communications—fails on its own terms.

In short, Defendant's interpretation cannot be reconciled with the TCPA's text, structure, or purpose. The ordinary meaning of "call" at the time of enactment encompasses any attempt to communicate by telephone, including text messages, and nothing in the statute suggests that Congress intended to exclude the most common form of telemarketing communication today. Reading the statute as Defendant proposes would create internal inconsistencies, undermine the Do Not Call Registry's effectiveness, and allow precisely the type of privacy invasion Congress

sought to prevent. The better—and correct—reading is the one adopted by the Second Circuit, the FCC, and the overwhelming weight of authority: unsolicited telemarketing text messages are "telephone calls" within the meaning of § 227(c).

### B. Section 227(c) of the TCPA Provides a Private Right of Action for Calling a Number on the Do Not Call Registry. The Regulation Sued Under was Promulgated Under Section 227(c).

"The Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, she can add her number to the list. The TCPA then restricts the telephone solicitations that can be made to that number." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019), *cert. denied*, *DISH Network L.L.C. v. Krakauer*, 140 S. Ct. 676 (2019). Defendant here posits something remarkable: every court and the thousands of decisions to have considered the propriety of the TCPA's private right of action for calls to numbers on the National Do Not Call Registry all got it wrong, since the TCPA's authorization for creation of the National Do Not Call Registry (allegedly) expired in 1992 and was not adequately reinstated by any subsequent authority, including Congress's mandate in 2003. That approach is at odds with the plain statutory history, Congressional intent, and the text of the relevant provisions, and is further contradictory to the Defendant's own canons of construction.

Defendant's argument is at odds with the mountain of case law holding otherwise. As with any question of statutory interpretation, the court's inquiry "begins with the text." *Ross v. Blake*, 578 U.S. 632, 638 (2016). The relevant regulation here, 47 C.F.R. § 64.1200(c)(2), provides that "No person or entity shall initiate any telephone solicitation to: A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." As a federal regulation, this particular regulation must have been promulgated under *some* part of the TCPA. "It is axiomatic that an administrative agency's power to promulgate legislative regulations

is limited to the authority delegated by Congress." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). In this regard, only a handful of subsections of the TCPA allow for the promulgation of regulations:

> • § 227(b)(2) authorizes the FCC to implement requirements that relate to the use of prerecorded voices and automatic telephone dialing systems;
>
> • § 227(c) authorizes the FCC to promulgate rules relating to the "need to protect residential telephone subscribers' privacy rights";
>
> • § 227(d)(1)–(3) allow regulations relating to technical and procedural standards related to fax machines, automatic telephone dialing systems, and "systems that are used to transmit any artificial or prerecorded voice message";
>
> • § 227(e)(3) provides for regulations relating to misleading or inaccurate caller ID; and
>
> • § 227(i) allows for the FCC to promulgate regulations to streamline information sharing with the FCC related to violations

All but § 227(c) are quickly eliminated as not even remotely applicable to the creation of the Do Not Call Registry. As will be explained, it follows that the instant regulation must have been promulgated under § 227(c). As Defendant correctly observes, 47 C.F.R. § 64.1200 was initially promulgated by the FCC in 1992 and authorized by Congress when it passed the TCPA in 1991 under 47 U.S.C. § 227(c)(1), which required the FCC to conduct "rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights." Congress required the FCC to conclude *that* rulemaking proceeding "Not later than 9 months after December 20, 1991." 47 U.S.C. § 227(c)(2). And, in so doing, Congress explicitly authorized and mandated the FCC to consider whether it was feasible to "require the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations." 47 U.S.C. § 227(c)(3).

Defendant claims that the FCC's failure to create the Do Not Call Registry in 1992, and Congress' failure to reference or otherwise reinstate its temporal authority under 47 U.S.C. §

227(c)(1) when it passed the Do Not Call Implementation Act in 2003, results in the lack of a private right of action to enforce the Do Not Call Registry because it was not promulgated under 47 U.S.C. § 227(c), but rather the 2003 Act. In other words, Defendant concedes that the Act properly created the Do Not Call Registry and incorporated it into the TCPA, but argues that, without the proper "hook" back to 47 U.S.C. § 227(c) therein, there exists no private right of action to enforce the Registry's protections under that subsection. As support for that shaky proposition, Defendant reasons that the time requirement in 47 U.S.C. § 227(c)(1) *forever barred* future rulemaking and/or promulgation of additional regulations, rendering 47 C.F.R. § 64.1200(c)(2) unenforceable under 47 U.S.C. § 227(c)(5)'s private right of action for violations of the regulations prescribed "under" that subsection. However, the plain text of 47 U.S.C. § 227(c)(3) *does not* require the creation of a database by 1992, or "by" a certain date at all, contrary to Defendant's contention. 47 U.S.C. § 227(c)(3).

Defendant gets this threshold question wrong. A review of 47 U.S.C. § 227(c)(1)(D) confirms that Congress explicitly contemplated and authorized the FCC to "consider whether there is a need for *additional Commission authority* to further restrict telephone solicitations, including those calls exempted under subsection (a)(3) of this section, and, if such a finding is made and supported by the record, *propose specific restrictions to the Congress*." In other words, no part of 47 U.S.C. § 227(c)(1) barred future rulemaking, as the Defendant claims. Congress was merely setting a date by which it desired *initial* rulemaking to be completed by, not barring *future* rulemaking after that date, and most certainly not in light of explicit Congressional authority authorizing such subsequent rulemaking in 15 U.S.C. § 6153. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 278 (2012) ("The one body whose future actions a legislature has no power to affect is the legislature itself. Just as a corporate board of

directors cannot adopt an immutable policy, legislators cannot make their laws irrepealable or disable themselves or their successors from taking action."). To that end, Congress explicitly mandated the FCC to "consider whether making such practices mandatory, and imposing substantial sanctions for violations would increase their effectiveness to the point that they could satisfy the statutory requirements of this Act." House Report 102–317, 102d Cong., 1st Sess. (1991) at 20. In other words, at the time it passed the TCPA, Congress made clear that the 1992 report it required was to be an *initial report*, not a *bar* to future rulemaking, as claimed by the Defendant. As the District of Maryland has observed:

> Subsection (c) also provided the FCC authority to 'require the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations, and to make that compiled list and parts thereof available for purchase.' § 227(c)(3). The FCC did so when it created the national 'Do-Not-Call' registry. 47 C.F.R. § 64.1200(c)(2).

*Ford v. NaturaLawn of Am., Inc.*, No. CV 24-354 PJM, 2024 WL 3161762, at *3 (D. Md. June 25, 2024); *accord Cacho v. Amity One Debt Relief*, No. EP-24-CV-160-KC, 2024 WL 4594177, at *4 (W.D. Tex. Oct. 24, 2024). In any event, as will be discussed below, Congress explicitly authorized the promulgation of the regulation at issue here, "under the [TCPA,]" in 2003, when it passed the Do Not Call Implementation Act at 15 U.S.C. § 6153.

The FCC acted pursuant to Congress' mandate and, in so doing, explicitly made clear to Congress that it presumed to leave the door open to future rulemaking. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("1992 TCPA Order"), CC Docket No. 92-90, Report and Order, 7 FCC Rcd. 8752. In considering whether it was feasible to implement the Do Not Call Registry in 1992, the FCC concluded that, given the limitations of technology *at the time,* the database would be "costly and difficult to establish and maintain in a reasonably accurate form," including because of a lack of widespread caller ID adoption, and that implementation of a

database at the time would result in shifted costs to consumers, which would ultimately detract from consumer protection efforts. *Id.* at 8760. Notably, in making such a determination, the FCC did *not* hold that a private right of action should not apply to such a database or that it was inappropriate from a consumer protection perspective. To the contrary, the FCC explicitly stated that a "consumer may also file suit . . . if he or she has received more than one telephone call . . . *in violation of the guidelines* for making telephone solicitations." *Id.* at 8780. The FCC used the word "the," not "these," indicating that the guidelines promulgated in the 1992 TCPA Order were not the exclusive remedies under which a consumer could sue under Section 227(c)(5). There can be little doubt that that direction came from § 227(c).

Nor did the FCC's rulemaking close the door to the creation of a future database or future rulemaking to further the TCPA's mandate in crafting rules to protect consumer privacy. A statute is "alterable when the legislature shall please to alter it." *Marbury v. Madison*, 5 U.S. 137, 177 (1803). Indeed, the FCC explicitly made clear to Congress that it required "no further authority . . . at the present time to accomplish the goals of the TCPA." 1992 TCPA Order at 8781. And, in response to commenters who requested that the FCC start the rulemaking process anew, the Commission concluded that "at this time," the "renewal of the rulemaking process is not warranted," suggesting that the FCC retained the authority to continue rulemaking at a future time. *Id.* In fact, to this end, the FCC explicitly stated that "If our current approach is not successful . . . it may be necessary to initiate a rulemaking proceeding to establish more stringent restrictions, or even to recommend to Congress that it increase penalties or make other statutory changes." *Id.* at 8781-82. This explicitly mentions the possibility of future rulemaking, which could include revisiting the database method if the company-specific do-not-call lists promulgated under the act failed to meet consumer privacy needs. *See id.* at 8761.

But even if this Court were to adopt the Defendant's argument that Section 227(c)(1) in some manner restricted the FCC's ability to promulgate regulations to protect consumer privacy as an initial matter after the initial rulemaking in 1992, a proposition that conflicts with the presumption that "the TCPA is a remedial statute, it should be liberally construed", C*arlton v. PDR Network, LLC*, 80 F.4th 466, 479 (4th Cir. 2023), Congress explicitly reopened that door when it passed the Do Not Call Implementation Act of 2003 ("2003 Act"). *See also Radvansky v. Kendo Holdings, Inc.*, 744 F. Supp. 3d 1314, 1321, 1321 n.3, n.4 (N.D. Ga. 2024) ("[T]he 2003 FCC order applies to section 227(c). . . .Therefore, Radvansky may bring a case [under (c)(2)].").

The Defendant's argument must additionally fail because, in the 2003 Act, at 15 U.S.C. § 6153, Congress *explicitly* delegated authority to the FCC to promulgate regulations relating to the newly-created National Do Not Call Registry "under the [TCPA]," and the FCC did so by initiating a rulemaking proceeding under subsection (c), the only appropriate subsection dealing with "consumer privacy." Congress explicitly passed the 2003 Act with a realization that the TCPA's then-current consumer privacy protections were inadequate. It is clear that, in Congress' directive to align the FTC and FCC's procedures, Congress intended for any subsequent rulemaking, including the FCC's 2003 TCPA Order, to provide a private right of action. Indeed, Congress explicitly stated that, "despite [internal do not call list and other] restrictions, telemarketing complaints continue to rise and there is an increasing need to provide consumers with the ability to opt-out of telemarketing calls." House Report 108–8, 108th Cong., 1st Sess. (2003) at 2-3. Accordingly, the Committee explicitly explained that:

> The FCC's do-not-call rules were created under the TCPA. *That statute explicitly gives the FCC the authority to set up a national do-not-call database.* In 1992, the FCC undertook a rulemaking, and after reviewing comments, determined that a national do-not-call list was too costly and burdensome at that time. The FCC instead opted to require telemarketers to maintain company-specific do-not-call lists. On September 12, 2002, the

> FCC issued a notice of proposed rulemaking to *review and possibly revise* its do-not-call rules. The comment period closed on January 31, 2003, and the FCC's Chief of Consumer and Governmental Affairs Bureau announced that the FCC's goal is to avoid regulatory duplication by working closely with the FTC and fashioning rules that benefit consumers and the telemarketing industry. As the FCC undertakes the process of revising its do-not-call regulations, there is the potential for inconsistencies between the FTC and FCC do-not-call rules. To address this issue, H.R. 395 directs the *FCC to complete its rulemaking within* 180 days of enactment and further requires the FCC to consult and coordinate with the FTC to maximize consistency between the two regulations. However, because the *FCC is bound by the TCPA*, it is impossible for the FCC to adopt rules identical to the FTC's TSR. . . . In order to remedy these types of inconsistencies, either the FTC or FCC must address them administratively, or Congress must address them legislatively. We encourage the FTC and the FCC to take the necessary steps to make their rules as consistent and compatible as possible.

*Id.* at 4 (emphasis added). Consistent with the Committee's intent, Congress required the FCC to issue a "final rule pursuant to the rulemaking proceeding that it began on September 18, 2002, *under the Telephone Consumer Protection Act* (47 U.S.C. 227 et seq.)." 15 U.S.C. § 6153 (emphasis added). It further directed that, "In issuing such rule, the Federal Communications Commission shall consult and coordinate with the Federal Trade Commission to maximize consistency with the rule promulgated by the Federal Trade Commission." *Id.*

Under *that* Congressional mandate, the FCC promulgated the instant regulation, 47 C.F.R. § 64.1200(c)(2), pursuant to its authority *under* the TCPA, and pursuant to the *explicit authority* Congress in 2003 gave the FCC to conduct rulemaking *"under"* the TCPA. 15 U.S.C. § 6153; s*ee also Siringi v. Parkway Fam. Mazda/Kia*, No. CV H-23-1499, 2023 WL 7130867, at *2 (S.D. Tex. Oct. 30, 2023) ("The Federal Communications Commission promulgated 47 C.F.R. § 64.1200[(c)(2)] under its authority to implement the Telephone Consumer Protection Act."). The plain text of the 2003 Act, as well as the FCC's resultant rulemaking, cited below, belies the Defendant's contention that those rules "were not issues pursuant to authority from Subsection 227(c) the TCPA." The Act, by its plain text, does not permit for the promulgation of regulations

*under the 2003 Act*, as claimed by Defendant, but rather *"under" the TCPA*. Under the ordinary meaning canon, Congress used the word "under" in the usual sense indicating derivation, subordination, or legal authority, rather than a looser association. Scalia & Garner 70. Thus, if the 2003 Act says "under the [TCPA,]" any regulation authorized thereunder must draw authority *from the TCPA*, not from any other related act, such as the Telemarketing Sales Rule or the 2003 Act itself, as Defendant claims. "[T]he meaning of a statute is to be looked for, not in any single section, but in all the parts together and in their relation to the end in view." *Id.* at 168. Reading the 2003 Act as empowering regulations *under the TCPA* rather than *under the 2003 Act* (or under the Telemarketing Sales Rule) fits with how statutes, amendments, and administrative rulemaking works–the authorizing statute does not become the base statute or amendment, nor does the authorized rule. *See Alexander v. Sandoval*, 532 U.S. 275, 286, 291 (2001) (explaining genesis of a right of action). And it is the plain meaning evident from the text.

As outlined above, only a handful of subsections of the TCPA allow for the promulgation of regulations, and § 227(c) is the only appropriate one applicable here. The establishment of regulations "under the TCPA" for implementing the Do Not Call Registry has nothing to do with regulations concerning autodialers (§ 227(b)), fax machines and other systems used to transmit prerecorded messages (§ 227(d)), misleading or inaccurate caller ID ((§ 227(e)), or information sharing with the FCC ((§ 227(i)). Those regulations called for under the 2003 Act, however, fit nicely within the ambit of § 227(c), and only that subsection, which explicitly deals with the promulgation of regulations to "protect residential telephone subscribers' privacy rights." And, as explained above, Section 227(c), under which 47 C.F.R. § 64.1200(c)(2) was unquestionably promulgated, contains a private right of action.

In any event, the fact remains that the FCC stated that it promulgated the instant do not call

regulations at 47 C.F.R. § 64.1200(c)(2) pursuant to authority Congress gave it in 15 U.S.C. § 6153, which authorized the FCC to promulgate the instant regulation "under" the TCPA at 227(c). *See Bowen*, 488 U.S. at 208. The *only* authority "under" which the FCC could promulgate regulations "under the [TCPA]" that supports the Congressional mandate is § 227(c), which provides for the instant private right of action to "protect residential subscribers' privacy rights to avoid receiving telephone solicitations to which they object." The FCC said so itself, confirming it was doing so pursuant to § 227(c). *See Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1265 (11th Cir. 2019) (citing 47 C.F.R. § 64.1200(c)(2) and explaining that it was created pursuant to regulations promulgated by the FCC). Indeed, to adopt the Defendant's reading of 227(c) as time barred would render the mandate of the 2003 Act ineffective, in violation of the presumption against ineffectiveness, as there is simply no other statutory subsection "under the TCPA" upon which Congress could direct the FCC to promulgate the regulations it ordered to implement the Do Not Call Registry, the entire purpose of which is to permit consumers to *lodge their objections against unsolicited telemarketing calls*.

And, although not necessary to reaching the instant conclusion, the FCC's regulatory history confirms that the FCC promulgated 47 C.F.R. § 64.1200(c)(2) under its authority in § 227(c), as reconfirmed by Congress in 2003 when it passed the 2003 Act at 15 U.S.C. § 6153. Pursuant to that mandate, the FCC referred back to the discussion from above, and then it expressly sought comment on whether "network technologies have been developed over the last decade," to permit the implementation and incorporation of the Do Not Call Registry and other rulemaking. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2003 TCPA Order"), CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14118. And, as the FCC explained, it adopted 47 C.F.R. § 64.1200(c)(2) as a "second major proceeding" under the TCPA,

as authorized by Congress, to "supplement the current company-specific do-not-call rules for those consumers who wish to continue requesting that particular companies not call them." *Id.* at 14017. It follows that, if the instant regulation "supplemented" regulations for which there was a private right of action in the first proceeding, the new regulations in the second proceeding, authorized by Congress, have that same private right of action as well. The FCC references Section 227(c) no fewer than 54 times, and not once does it state that its rulemaking authority was time-barred; to the contrary, in implementing the Registry mandate, the FCC *cites* to Section 227(c)(3) of the TCPA as *explicitly* authorizing the use of a database and *confirms it is proceeding under that section*. *Id.* at 14028, 14034.

Of particular import against the Defendant's argument, in the 2003 Order, the FCC *explicitly stated* that it was promulgating what would become 47 C.F.R. § 64.1200(c)(2): "Pursuant to our *authority under section 227(c)*, we adopt a national do-not-call registry that will provide residential consumers with a one-step option to prohibit unwanted telephone solicitations." *Id.* at 14034 (emphasis added). The FCC also reviewed the "other requirements of section 227(c)(1)," which, as described above, impose no time-restrictive language by that subsection's explicit statutory text. *Id.* at 14042; 47 U.S.C. § 227(c)(1). In this regard, Defendant's position is especially curious in light of its contention that a "blunt view" of regulations can lead to "erroneous conclusions" of the same type Defendant makes here.

Nor do the FCC's comments on the TCPA's private right of action in the 2003 TCPA Order mandate a different result. Defendant takes the quote that the "Commission declines to make any determination about the specific contours of the TCPA's private right of action" out of context. In context, the FCC was addressing commenters' concerns over the TCPA's requirement that a consumer receive two calls in a twelve-month period, or whether one phone call with multiple

violations is sufficient. *Id.* at 14135–36. As such, that portion of the 2003 TCPA Order does not stand for the proposition, citing no one, that the Order "disavowed any opinion about" the propriety of promulgating the instant regulations or that the order "does not provide for any private right of action for a Section 64.1200(c)(2) violation."

Defendant's argument that the 2003 Act or the 2003 TCPA Order needed to additionally explicitly outline that they were intended to be promulgated in spite of the 1991 rulemaking requirement runs contrary to the proposition that "there is no legal effect to a statutory provision stating that any exceptions to the statute's requirements . . . must specifically refer to the statute." *Scalia & Garner* 279. As explained above, it also runs contrary to the presumption against ineffectiveness. If the "language is susceptible of two constructions, one of which will carry out and the other defeat [its] manifest object, [the statute] should receive the former construction." *Id.* at 63. Relatedly, the "presumption of validity disfavors interpretations that would nullify the provision or the entire instrument, . . . since an interpretation that renders a provision invalid (unlawful) 'obstructs' its application to the maximum." *Id.* at 66. Defendant's contrary contention, that Congress required the FCC to create a database by 1992, or else forever bar future rulemaking, including the 2003 Act *passed by Congress* authorizing such rulemaking under the TCPA, runs contrary to these canons of construction and common sense.

Defendant's position begs the question as to why Congress would direct the FCC to promulgate implementing regulations under the TCPA when it contends that Congress eliminated the FCC's authority to do so in 1992, or why Congress would do something it did not intend explicitly to do. Congress was clear when it directed the FCC to implement the newly-created Do Not Call Registry "under the [TCPA]." 15 U.S.C. § 6153. The FCC did so, promulgating 47 C.F.R. § 64.1200(c)(2) under the TCPA's consumer privacy provision, 47 U.S.C. 227(c), which contains

a private right of action. As the regulation sued under here, 47 C.F.R. § 64.1200(c)(2), was promulgated under 47 U.S.C. 227(c). There exists a private right of action for violations of the same, as Congress intended under 47 U.S.C. 227(c)(5).

## IV. CONCLUSION

Defendant's Motion to Dismiss rests on two flawed premises: first, that telemarketing text messages are not "telephone calls" under § 227(c); and second, that the National Do Not Call Registry regulations were not promulgated pursuant to § 227(c) and therefore are not privately enforceable. Both arguments are contrary to the TCPA's text, structure, and purpose, the FCC's longstanding implementation of the statute, and controlling and persuasive authority, including decisions from courts within the Second Circuit. The ordinary meaning of "telephone call" at the time Congress enacted the TCPA encompassed communications by telephone, including text messages. Defendant's interpretation would create an irrational disconnect between the TCPA's substantive protections and its enforcement mechanism, frustrate Congress's objective of protecting consumer privacy, and create a loophole allowing telemarketers to evade the National Do Not Call Registry simply by sending text messages instead of placing voice calls. Likewise, Defendant's contention that the National Do Not Call Registry regulations fall outside § 227(c) cannot be reconciled with the TCPA, the Do Not Call Implementation Act of 2003, the FCC's rulemaking history, or decades of consistent judicial application.

For these reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss in its entirety and grant such other and further relief as the Court deems just and proper.

*[Counsel signatures to follow on next page.]*

DATED this 1st day of July, 2026.

Respectfully submitted,

By: *<u>/s/ Cassandra P. Miller</u>*
Cassandra P. Miller *(pro hac vice)*
**STRAUSS BORRELLI PLLC**
980 N Michigan Ave Ste 1610
Chicago, IL 60611-7502
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
cmiller@straussborrelli.com

*I certify this memorandum contains 8,456 words in compliance with Judge Vargas' Individual Practices and Local Civil Rules.*

Anthony I. Paronich (*pro hac vice* forthcoming)
**PARONICH LAW, P.C.**
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
Facsimile: (508) 318-8100
anthony@paronichlaw.com

*Counsel for Plaintiff and the Putative Class*

**CERTIFICATE OF SERVICE**

I, Cassandra P. Miller, hereby certify that on July 1, 2026, I caused the foregoing to be electronically filed with the Court using the Court's CM/ECF system which will send an electronic copy to all parties and/or their counsel of record.

DATED this 1st day of July, 2026.

Respectfully submitted,

By: */s/ Cassandra P. Miller*
Cassandra P. Miller *(pro hac vice)*
**STRAUSS BORRELLI PLLC**
980 N Michigan Ave Ste 1610
Chicago, IL 60611-7502
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
cmiller@straussborrelli.com